# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| THOMAS LEE MCNUTT, | ) |
|     *Plaintiff*, | ) Case No. 2:17-CV-212 |
| v. | ) Judge Travis R. McDonough |
| | ) Magistrate Judge Clifton L. Corker |
| CENTURION MEDICAL, CORIZON MEDICAL, GEORGIA CROWELL, DR. BERNARD, DR. SAMUEL RICHARDSON, BETH JENNINGS, NURSE PRACTITIONER HEATHER OLLIS[1], DR. TOM KESSLER and MRS. BALLARD, | ) |
|     *Defendants*. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's pro se complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 [Doc. 1] and motion for a temporary restraining order and injunctive relief [Doc. 4]. Plaintiff has also filed a memorandum in support of his § 1983 complaint [Doc. 3]. For the reasons discussed below, Plaintiff's motion for a temporary restraining order and injunctive relief [Doc. 4] will be **DENIED**. Defendants Crowell, Kessler, Ballard, and Corizon will be **DISMISSED**. Plaintiff's claims against Defendants Bernard, Richardson, Jennings, and Ollis in their official capacities will be **DISMISSED**. Accordingly, this action will proceed only as to Plaintiff's claims of deliberate indifference under the Eighth Amendment against Defendants

---

[1] The Court has corrected the spelling of Defendant Ollis's name, which Plaintiff misspelled as "Olis" in his complaint [Doc. 1]. Accordingly, the Clerk is **DIRECTED** to correct Defendant Ollis's name in the Court file.

Bernard, Richardson, Jennings, and Ollis, in their individual capacities, and against Defendant Centurion.

I.   **BACKGROUND**

Plaintiff, currently in custody at the Northeast Correctional Complex ("NECX"), filed this complaint under 42 U.S.C. § 1983 on November 20, 2017, against Defendants Crowell, Bernard, Richardson, Jennings, Ollis, Kessler, Ballard, Centurion Medical ("Centurion"), and Corizon Medical ("Corizon") [Doc. 1 p. 2]. Plaintiff brings this action for inadequate medical care in violation of the Eighth Amendment [*Id.* at 4].

Plaintiff claims that he has a diagnosed degenerative congenital spinal disorder, which had been previously treated with cortisol shots [Doc. 3 p. 2]. However, Plaintiff alleges that, upon his incarceration at NECX, his cortisol treatment ended [*Id.*]. Further, Plaintiff claims that Defendant Bernard informed him during his initial diagnosis that he would not receive cortisol shots due to the cost of treatment [*Id.* at 3]. Plaintiff additionally claims that Defendant Jennings stated "we do give cortisol shots but no one here will touch your neck" [*Id.*].

Plaintiff alleges that he suffered a fracture of his C-1 vertebrae in 2014, and his physical status has "deteriorated significantly," including suffering from neuropathy and constant pain in his arms, due to the lack of treatment [*Id.* at 3]. Plaintiff claims that Defendants have refused to provide him with cortisol injections, which has accelerated the degeneration of his spine [*Id.*]. Instead, Defendant Richardson recently treated Plaintiff's medical conditions and neuropathy merely by providing Plaintiff with athlete's foot cream [*Id.*]. Moreover, Plaintiff alleges that Defendant Bernard told Plaintiff that, although he needed surgery, the State would not pay the "$240,000 to do it" [*Id.*]. Plaintiff claims that Centurion has refused to provide medically necessary surgery "not as a matter of necessity but as a matter of cost" [*Id.* at 4]. Additionally,

Plaintiff alleges that surgery and proper treatment are not being performed because he potentially will be released in 2019 [*Id.*]. Plaintiff requests that the Court order an M.R.I. and spinal surgery to be performed, as well as costs and any other required medical treatment [Doc. 3 p. 4].

## II.     ANALYSIS

### A.     Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999) ("Congress directed the federal courts to review or 'screen' certain complaints *sua sponte* and to dismiss those that failed to state a claim upon which relief could be granted [or] . . . sought monetary relief from a defendant immune from such relief."). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers,* 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

To state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*,

134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In other words, Plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000).

**B.    Lack of Personal Involvement**

Plaintiff has failed to allege the personal involvement of Defendants Crowell, Kessler, Ballard, and Corizon. A defendant's personal involvement in the deprivation of constitutional rights is required to establish liability under § 1983. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.5 (6th Cir. 2005). Generous construction of pro se complaints is not limitless; indeed, a court need not assume or conjure up claims that a pro se litigant has not pleaded. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Plaintiff must affirmatively show that each Defendant he seeks to hold liable, through that Defendant's own actions, has violated his constitutional rights. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). Other than listing Defendants Crowell, Kessler, Ballard, and Corizon as Defendants, Plaintiff's complaint fails to mention these Defendants or to allege their personal involvement in any unconstitutional behavior. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.,* 92 F. App'x 188,

190 (6th Cir. 2004) (affirming dismissal of complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Further, these Defendants cannot be held liable due to any potential supervisory position. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A plaintiff must show "that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (internal citation omitted); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Thus, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983 against Defendants Crowell, Kessler, Ballard, and Corizon. Plaintiff's claims against Defendants Crowell, Kessler, Ballard, and Corizon will therefore be **DISMISSED**.

### C. Plaintiff's Claims Against Centurion

Centurion is a private entity which is contracted by TDOC for providing medical care to individuals incarcerated at jails and prisons within its jurisdiction [Doc. 3 p. 4]. It is, therefore, a "person" acting under color of state law and subject to liability under § 1983. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 56 (1998) (holding that a private medical provider contracted to provide medical care to prisoners is a state actor for purposes of § 1983); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that "municipalities and other local government units [are] included among those persons to whom § 193 applies"). The Sixth Circuit has held that the same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a

private corporation, such as Centurion.[2]  *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691).

However, entities may not be held liable under § 1983 through a *respondeat superior* theory of recovery simply on the basis that they employ tortfeasors.  *Monell*, 436 U.S. at 690.  Instead, a municipality or other governmental entity can be held responsible for an alleged constitutional deprivation only if there is a direct causal link between a policy or custom of the municipality (or entity) and the alleged constitutional violation.  *Id.* at 694; *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory . . . . [A] private contractor is liable for a policy or custom of that private contractor . . . .").  Thus, to establish § 1983 liability on the part of an entity, a plaintiff must "identify the policy, connect the policy to [the entity] and show that the particular injury was incurred because of the execution of that policy."  *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (internal quotation marks and citation omitted).  While "[i]dentifying the precise policy or custom may help make the complaint's allegations more plausible, . . . categorically viewing such a failure as dispositive in every case involving § 1983 claims risks imposing a higher standing of pleading than the Federal Rules of Civil Procedure mandate."  *Lott v. Swift Transp. Co.*, 694 F. Supp. 2d 923, 928 (W.D. Tenn. 2010) (internal citation omitted).

Plaintiff has alleged that he was denied medically necessary care because of Centurion's policy of denying treatment that is too expensive or when an inmate is close to a release date.

---

[2] "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'"  *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54).

For purposes of this initial review, the Court finds that Plaintiff has adequately identified a policy connected to Centurion's medical treatment at NECX and has alleged that his injury was incurred because of the execution of this policy. *See Corlew v. Metro. Sheriff's Dep't*, No. 3:15-cv-0369, 2015 WL 1756942, at *4 (M.D. Tenn. Apr. 17, 2015) (allowing a plaintiff's claims to proceed past the screening stage against private entity and municipal defendants in their official capacity "based on the plaintiff's allegation that the denial of medical care was based upon the cost" to liberally construe the complaint as asserting claims of "a jail-wide policy of denying necessary medical care if it is deemed too expensive").

Plaintiff has brought suit against all Defendants "in their personal and professional capacity" [Doc. 3 p. 4]. To the extent that Defendants Bernard, Richardson, Jennings, and Ollis are sued in their official capacities as employees of Centurion, Plaintiff's claims against these Defendants in their official capacities are redundant because "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (internal citations omitted). An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Because Centurion remains as a Defendant, the official-capacity claims against the employees are "redundant and therefore unnecessary." *Malone v. Corr. Corp. of Am.*, No. 3:13–cv–1212, 2013 WL 6498067, at *7 (M.D. Tenn. Dec. 11, 2013); *see also Shepherd v. Floyd Cty.*, No. 15–54–ART, 2015 WL 5315730, at *1 (E.D. Ky. Sept. 10, 2015) ("Section 1983 claims may be dismissed against government entity employees as redundant when the plaintiff also sues the government entity"). Therefore, Plaintiff's claims against Defendants Bernard, Richardson, Jennings, and Ollis in their official capacities will be **DISMISSED**.

### D. Plaintiff's Deliberate-Indifference Claims

The Eighth Amendment's ban against cruel and unusual punishment requires prison authorities to provide medical care for prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In order to state a claim under § 1983 in the medical context, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Thus, "[a] constitutional claim for denial of medical care has objective and subjective components." *Blackmore v. Kalamazoo Cty.,* 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires an inmate to establish that he is suffering from a sufficiently serious medical need, such that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The subjective component requires an inmate to show a prison official possessed a culpable state of mind. *Id.* "A defendant possess[es] a sufficiently culpable state of mind when he acts with deliberate indifference." *Carter v. City of Detroit,* 408 F.3d 305, 312 (6th Cir. 2005) (internal citation omitted). "Put simply, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Johnson v. Karnes,* 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 836). Plaintiff must also demonstrate that his "harm was caused by a constitutional violation," and that "the [entity or municipality] is responsible for that violation." *Foster v. City of Cleveland Heights*, 81 F.3d 160, 1996 WL 132181, at *1 (6th Cir. Mar. 21, 1996).

Negligence will not support a § 1983 claim for denial of medical care. *See Farmer*, 511 U.S. at 837; *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir. 1992). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

8

become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Plaintiff claims that his failure to receive proper treatment and surgery constitutes deliberate indifference by the individual Defendants and Centurion. "A defendant's policy of failing to comply with its contractual obligations based upon cost considerations could be seen as evidence of a custom or pattern of deliberate indifference." *Parton v. Corizon Healthcare, Inc.*, No. 3:12–cv–656, 2014 WL 4259457, at *4 (E.D. Tenn. Aug. 28, 2014). Further, "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). Therefore, at this point in the proceedings, the Court does not find that Plaintiff's allegations of deliberate indifference are frivolous or malicious, or do not state a claim which would entitle Plaintiff to relief under § 1983. Thus, Plaintiff's Eighth Amendment claims will advance beyond the PLRA screening phase and process shall issue against Defendants Bernard, Richardson, Jennings, and Ollis in their individual capacities, and against Defendant Centurion.

### III. MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff has also filed a motion for a temporary restraining order and injunctive relief [Doc. 4], to which Defendants Centurion, Crowell, Bernard, Jennings, and Ollis have responded in opposition [Doc. 5]. In his motion, Plaintiff requests a temporary restraining order directing "the [D]efendants [to] send [P]laintiff to a medical facility for an MRI to assess his immediate

conditions; and that the[y] make arrangements for a qualified medical team to perform the necessary corrective surgery at the earliest opportunity" [Doc. 4 p. 2].

Federal Rule of Civil Procedure 65 governs the Court's power to grant injunctive relief, including temporary restraining orders without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee,* No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a temporary restraining order or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause

substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

In this case, a careful balancing of the factors weighs against granting Plaintiff's request for a temporary restraining order and injunctive relief. First, Plaintiff's likelihood of success on his claims is no greater than the Defendants' likelihood at this stage of the proceedings. Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *NAACP v. City of Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted). Therefore, the Court finds that Plaintiff has failed to meet his "initial burden" of showing a strong or substantial likelihood of success on the merits.

With regard to the second factor, Plaintiff claims that he is suffering increased pain, and "has a reasonable and articulable fear of loss of life and limb if he is not treated very soon" [Doc. 4 p. 2]. However, Plaintiff has failed to present any admissible evidence from a medical professional illustrating that he is receiving inadequate medical care or that he needs surgery. Additionally, even if Plaintiff is able to show a disputed issue of fact as to whether his medical

treatment is appropriate, such a showing is not sufficient for equitable relief. *See Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (stating "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion"). Ultimately, "[t]his Court is ill-equipped to micromanage medical treatment." *Anderson v. Prison Health Servs.*, No. 10-15154, 2011 WL 2144205, at *3 (E.D. Mich. Apr. 27, 2011) (citing *Westlake*, 537 F.2d at 860 n.5).

Third, a temporary restraining order in this situation could cause substantial harm to others, in that it would remove from prison officials the deference that they are generally afforded in the administration and control of the prison. Decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive. *See Griffin v. Berghuis*, 563 F. App'x 411, 417–18 (6th Cir. 2014) (citing *Turner v. Safley*, 482 U.S. 78, 82 (1987)). The TDOC and Centurion have an interest in "promulgating and enforcing prison regulations, including reasonable rules involving prisoner health care . . . ." *Robbins v. Payne*, No. 11–15140, 2012 WL 3584235, at *3 (E.D. Mich. July 9, 2012) (denying plaintiff's motion for preliminary injunctive relief), *adopted by* 2012 WL 3587631 (E.D. Mich. Aug. 20, 2012). Additionally, Centurion "and its medical personnel have an interest in practicing medicine based on their best medical judgment and on the needs of their patients." *Id.* Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson,* 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland,* 740 F.2d 432 at 438 n.3 (6th Cir. 1984).

Lastly, as to the public-interest factor, if the Court granted Plaintiff a preliminary injunction, the Court would effectively be making a medical determination that the medical treatment which Plaintiff seeks is necessary and ordering the Defendants to provide it, based solely on Plaintiff's assertions. The Court finds that such a determination would not serve the public interest. *See Glover*, 855 F.2d at 284 (setting forth various public policy concerns relating to court intrusion into jail administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations").

The purpose of a temporary restraining order or preliminary injunction is to maintain the relative positions of the parties until proceedings on the merits can be conducted. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, a careful balancing of the factors weighs against the issuance of any preliminary injunction or temporary restraining order, and Plaintiff's motion for temporary restraining order and injunctive relief [Doc. 4] will be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for a temporary restraining order and injunctive relief [Doc. 4] is **DENIED**. Further, Plaintiff's Eighth Amendment claims against Defendants Crowell, Kessler, Ballard, and Corizon are **DISMISSED**. Plaintiff's Eighth Amendment claims against Defendants Bernard, Richardson, Jennings, and Ollis in their official capacities are **DISMISSED**. Accordingly, this action will proceed only as to Plaintiff's claims of deliberate indifference under the Eighth Amendment against Defendants Bernard, Richardson, Jennings, and Ollis, in their individual capacities, and against Defendant Centurion.

13

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendants Bernard, Richardson, Jennings, Ollis, and Centurion. Plaintiff is **ORDERED** to complete the service packets and to return them to the Clerk's Office within twenty days of receipt of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to timely return the completed service packets could jeopardize his prosecution of this action.

Defendants **SHALL** answer or otherwise respond to the complaint within twenty-one days from the date of service. If any Defendant fails to timely respond to the complaint, judgment by default may be entered against him.

Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

Finally, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**